**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| DINETHA GILMORE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:10-1221 |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

In this case seeking judicial review of denial of Social Security benefits, each party has filed a motion for summary judgment.[1]   The motions now are ripe for decision.  Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court concludes that Plaintiff's Motion should be **denied** and Defendant's Motion should be **granted**.

## I.   BACKGROUND

### A.   Procedural Background

Plaintiff Dinetha Gilmore filed an application with the Social Security

---

[1]   Plaintiff's Motion for Summary Judgment [Doc. # 16]   ("Plaintiff's Motion"); Defendant's Motion for Summary Judgment [Doc. # 17] ("Defendant's Motion"); Defendant's Brief in Opposition [Doc. # 18] ("Defendant's Brief").

Administration ("SSA") on September 26, 2007, seeking disability benefits under Title II and supplemental security income under Title XVI.  In both applications, Gilmore alleged disability beginning on February 1, 2006.  After being denied benefits initially and on reconsideration, Gilmore timely requested an administrative hearing before an Administrative Law Judge ("ALJ") to review the decision.

ALJ William B. Howard held a hearing on August 21, 2008, in Houston, Texas.[2]  The ALJ heard testimony from vocational expert ("VE") Cecile Johnson and from medical expert ("ME") Giao N. Hoang, M.D.  In a decision dated October 29, 2008, the ALJ denied Gilmore's application for benefits.[3]  On February 22, 2010, the Social Security Administration's Appeals Council denied Gilmore's request to review the ALJ's decision, rendering the ALJ's determination final.[4]  Gilmore filed this case on April 12, 2010, seeking judicial review of the Commissioner's denial of her claim for benefits.[5]

## B.   Factual Background

Gilmore claims impairments caused by osteoarthritis of the right shoulder;

---

[2]      R. 17-65 (hearing transcript).

[3]      R. 9-16 (ALJ Decision).

[4]      R. 1-3.

[5]      Complaint [Doc. # 1].

obesity; depressive disorder; degenerative disc disease of the knees; asthma; hypertension; gastro- esophageal reflux disease ("GERD"); and a history of treatment for breast cancer.   Her alleged onset date is February 1, 2006.

Gilmore graduated from high school in 1978 and entered the Army in 1979, where she served until her honorable discharge in 1984.  Since leaving active duty, she has worked as a cashier and a security guard, among other jobs.

Gilmore had surgery on her knee in 1983 and the Veterans Administration subsequently found her 10% disabled based on her knee problems.  She states that her knee pain is exacerbated by her obesity.[6]  A physician at the Veterans' Administration medical center in March 2006 assessed her as having "traumatic and post-operative osteoarthritis of the left knee, moderate to severe."[7]

In February 2006, Gilmore was diagnosed with breast cancer.   She had a lumpectomy on her left breast, followed by six weeks of radiation.[8]  She was put on a five-year course of Tamoxifen.  At her hearing, when asked by her attorney about side effects of Tamoxifen, she stated, "sometime[s] I get tired but not a whole lot."[9]

---

[6]      Gilmore is 5'3" and 270 pounds.  R. 31.

[7]      R. 336.

[8]      R 237-39,  277-82.

[9]      R. 33.  When questioned by her attorney, Gilmore testified as follows:

(continued...)

A mammogram in February 2008 showed no evidence of malignancy, and Gilmore was returned to a schedule of annual mammograms.[10]

In March 2006 at the Veterans' Administration medical center, Gilmore screened positive for depression.   The medical records report that she was not sleeping well, was sensitive to criticism, and had thoughts of suicide after her cancer diagnosis.  She was diagnosed with "depressive order, not otherwise specified," with moderate symptoms of depression and a Global Assessment of Functioning score of 55.[11]   At her administrative hearing Gilmore testified that she takes Effexor for depression.[12]

Gilmore's arthritis in her right shoulder causes her pain and restricts her movement.  Records from September 2006 state that she had a "mild irregularity in

---

[9]      (...continued)
        Q:     And do you have any side effects from [Tamoxifen]?
        A:     Sometime[s] I get kind of tired but not a whole lot.
        Q:     Explain to the Court what you mean by sometimes you get tired.
        A:     My body just is, it won't go no more so I have to lay down and rest a little.
        Q:     And do you have to lay down every day?
        A:     Yes, sir.
        Q:     And about how long do you lie down every day?
        A:     About two or three hours.

        *Id*.

[10]     R. 34, 437.

[11]     R. 329-33.

[12]     R. 35.

the AC joint compatible with mild degenerative change," but that there was no fracture and no evidence of dislocation.[13]  Subsequently, from April through June 2007, she received physical therapy for her shoulder.[14]  She testified at her hearing in August 2008 that she cannot lift her right arm above her head, and that her left arm is weak.[15]

Gilmore has been diagnosed with hypertension, but her condition is stable and controlled by medication and there is no evidence of end organ damage.[16]  She also has been diagnosed with asthma, which the medical expert described as benign.[17]

Gilmore also has been diagnosed with GERD.  The medical expert at her administrative hearing testified that GERD can cause pain and can cause symptoms of heartburn or reflux when Gilmore bends over, but that the condition is treatable with medication.[18]

Gilmore testified at hearing that she was unable to maintain her full time employment as a security guard because of her cancer and the cancer treatments.

---

[13]    R. 372.

[14]    R. 367-68.

[15]    R. 33-34.

[16]    R. 360, 365 (medical records from 2007); see R. 44 (medical expert testimony).

[17]    R. 43; see R. 365 (medical records from June 2007 list asthma as stable).

[18]    R. 44-45.

After her biopsy in February 2006, she did not return to work until November 2006. However, she soon went to part-time work because she "couldn't handle the load."[19] She worked part-time as a security guard until October 2007, after which she had problems moving her upper body, and has not worked since that time.[20]

## II.   **SUMMARY JUDGMENT STANDARD**

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.[21]  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[22]  "An issue is material if its resolution could affect the outcome of the action.  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return

---

[19]   R. 28-29.

[20]   R. 30-31.

[21]   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).

[22]   FED. R. CIV. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

a verdict for the nonmoving party."[23]

## III.   <u>STANDARD OF REVIEW</u>

Judicial review of the Commissioner's denial of disability benefits is limited to two inquiries: first, whether the final decision is supported by substantial evidence on the record as a whole, and second, whether the Commissioner applied the proper legal standards to evaluate the evidence.[24]  "Substantial evidence" is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.[25]  It is more than a mere scintilla and less than a preponderance.[26]

When applying the substantial evidence standard on review, the court scrutinizes the record to determine whether such evidence is present.[27]  In determining whether substantial evidence of disability exists, the court weighs four factors: (1) objective medical evidence; (2) diagnoses and opinions; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work

---

[23]   *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations and quotation marks omitted).

[24]   *See Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

[25]   *Audler*, 501 F.3d at 447 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

[26]   *Id.*; *Perez*, 415 F.3d at 461; *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

[27]   *Perez*, 415 F.3d at 461; *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

history.[28]  If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed.[29]  Alternatively, a finding of no substantial evidence is appropriate if no credible evidentiary choices or medical findings support the decision.[30]   The court may not, however, reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.[31]  In short, conflicts in the evidence are for the Commissioner, not the courts, to resolve.[32]

## IV.   <u>ANALYSIS</u>

### A.   <u>Statutory Basis for Benefits</u>

Gilmore applied for both Social Security disability insurance and Supplemental Security Income (SSI) benefits.  Social Security disability insurance benefits are authorized by Title II of the Social Security Act.  The disability insurance program provides income to individuals who are forced into involuntary, premature retirement,

---

[28]   *Perez*, 415 F.3d at 462 (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991)).

[29]   *Id.* at 461 (citing *Richardson*, 402 U.S. at 390); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002).

[30]   *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

[31]   *Audler*, 501 F.3d at 447; *Masterson*, 309 F.3d at 272.

[32]   *Perez*, 415 F.3d at 461; *Masterson*, 309 F.3d at 272.

provided they are both insured[33] *and* disabled,[34] regardless of indigence.

SSI benefits are authorized by Title XVI of the Social Security Act, and provides an additional resource to the aged, blind and disabled to assure that their income does not fall below the poverty line.[35]  Eligibility for SSI is based on proof of disability[36] and indigence.[37]  A claimant applying to the SSI program cannot receive payment for any period of disability predating the month in which he applies for benefits, no matter how long he has actually been disabled.[38]  Thus, the month following an application fixes the earliest date from which SSI benefits can be paid. Eligibility for SSI, however, is not dependent on insured status.

Although these are separate and distinct programs, applicants to both programs must prove "disability" under the Act, which defines disability in virtually identical language.  Under both provisions, "disability" is defined as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical

---

[33]     42 U.S.C. § 423(c) (definition of insured status).

[34]     42 U.S.C. § 423(d) (definition of disability).

[35]     20 C.F.R. § 416.110.

[36]     42 U.S.C. § 1382c(a)(3) (definition of disability).

[37]     42 U.S.C. §§ 1382(a) (financial requirements).

[38]     *Brown v. Apfel*, 192 F.3d 492, 495 n.1 (5th Cir. 1999); 20 C.F.R. § 416.335.

or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[39]  The law and regulations governing the determination of disability are the same for both programs.[40]

## B.    Determination of Disability

When determining whether a claimant is disabled, an ALJ must engage in a five-step sequential inquiry, as follows: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment in Appendix 1 of the regulations; (4) whether the claimant is capable of performing past relevant work; and (5) whether the claimant is capable of performing any other work.[41]  The claimant has the burden to prove disability under the first four steps.[42]  If the claimant successfully carries this burden, the burden shifts to the Commissioner at step five to

---

[39]    42 U.S.C. § 423(d)(1)(A) (disability insurance); 42 U.S.C. § 1382c(3)(A) (SSI).

[40]    *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

[41]    *Perez*, 415 F.3d at 461; *Newton*, 209 F.3d at 453.  The Commissioner's analysis at steps four and five is based on the assessment of the claimant's residual functional capacity ("RFC"), or the work a claimant still can do despite his or her physical and mental limitations.  *Perez*, 415 F.3d at 461-62.  The Commissioner assesses the RFC before proceeding from step three to step four.  *Id.*

[42]    *Perez*, 415 F.3d at 461; *Myers*, 238 F.3d at 619.

show that the claimant is capable of performing other substantial gainful employment that is available in the national economy.[43]   Once the Commissioner makes this showing, the burden shifts back to the claimant to rebut the finding.[44]   A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis.[45]

In this case, at step one, the ALJ determined that Gilmore had not engaged in substantial gainful activity since her alleged onset date of February, 1, 2006.[46]   The ALJ found at step two that Gilmore had eight severe impairments: osteoarthritis of the shoulder; obesity; depressive disorder; status-post treatment for breast cancer; degenerative disc disease of the knee; asthma; hypertension; and gastro-esophageal reflux disease ("GERD").   At step three, the ALJ concluded that Gilmore's impairments, singly or in combination, did not meet or medically equal a listed impairment in the relevant federal regulations.

Before proceeding to step four, the ALJ assessed Gilmore's residual functional capacity ("RFC") as follows:

---

[43]     *Perez*, 415 F.3d at 461; *Masterson*, 309 F.3d at 272; *Greenspan*, 38 F.3d at 236.

[44]     *Perez*, 415 F.3d at 461; *Newton*, 209 F.3d at 453.

[45]     *Perez*, 415 F.3d at 461 (citing 20 C.F.R. § 404.1520(a)).

[46]     Gilmore meets the insured status requirements of the Social Security Act through December 31, 2011.

[T]he claimant has the [RFC] to lift or carry 10 pounds frequently and 20 pounds occasionally, to sit for 6 hours in an 8-hour workday, to stand and/or walk for 4 hours in an 8-hour workday, to occasionally crawl; and to only occasionally reach overhead.  She must not climb a rope, ladder, or scaffold or work at unprotected heights or around dangerous machinery.  She must not work in or around excessive fumes, dust, odors, chemical or gases, or in extreme temperatures.  The claimant is limited to understanding, remembering, and carrying out detailed but not complex tasks.  Due to reduced stress tolerance she must not work at an assembly line forced pace.[47]

At step four, the ALJ determined that Gilmore was capable of performing her past relevant work as a security guard (light, semi-skilled) and cashier (light, unskilled). Based on the foregoing, the ALJ concluded that Gilmore was not disabled from February 1, 2006 through October 29, 2008, the date of the decision.

C.    **Plaintiff's Arguments for Reversal**

Gilmore now raises four grounds for reversal of the Commissioner's denial of benefits.

1.    **Proper Evaluation of Treating Physician's Opinion**

Gilmore argues that the ALJ improperly rejected the opinion of her treating physician, Thomas Porter, M.D., when assessing her RFC.  In support, Gilmore cites to Dr. Porter's responses on a form entitled "Physical Residual Functional Capacity

_____

[47]    R. 13.

Questionnaire," dated December 21, 2007.[48] In response to a question about how long Gilmore could stand or walk "total in an 8-hour working day," Dr. Porter checked a box for the response "about 2 hours."[49]

Gilmore argues that the ALJ erred when, in reliance on the medical expert and contrary to Dr. Porter's opinion, he found that Gilmore was capable of standing for four hours, rather than two hours, in an eight-hour workday.  She cites to the Fifth Circuit's opinion in *Newton v. Apfel*, which held that "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the claimant's treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)."[50] *Newton* further held that, although the opinion of a treating physician "should be afforded considerable weight in determining disability, 'the ALJ has sole responsibility for determining a claimant's disability status.'"[51]  Moreover, a treating physician's opinion "may be assigned little

---

[48]    R. 449-453.

[49]    R. 451.

[50]    *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000) (emphasis original).

[51]    *Id*. at 455 (quoting *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994)).

or no weight when good cause is shown."[52]  Good cause for discounting the opinion

may be found when the treating physician's opinion is unsupported by the evidence.[53]

The ALJ in this case cited to 20 C.F.R. § 404.1527, which gives factors for

consideration when an ALJ declines to give "controlling weight" to the opinion of a

treating physician, but did not analyze each factor listed in the section. He stated in

his opinion:

> Dr. Hoang [the medical expert] opined that based upon his review of the
> medical evidence and considering the claimant's obesity, she was
> capable of the above stated physical exertional and non-exertional
> limitations.  He noted that although the claimant's treating physician
> opined that she was only capable of 2 hours of standing or walking in a
> 8-hour workday, he felt the record supported she was capable of 4 hours
> of standing or walking, 2 hours at a time.

> The undersigned has given great weight to the opinion of Dr. Hoang
> since his testimony is consistent with the medical evidence of record and
> even with the progress notes of Dr. Porter, the claimant's treating
> physician.

> As for Dr. Porter's opinion at Exhibit 13F [the Physical RFC
> Questionnaire currently relied upon by Gilmore], the undersigned has
> given it great consideration since he is the claimant's treating physician;
> however, the undersigned agrees with Dr. Hoang that the claimant is
> capable of 4 hours of standing or walking in an 8-hour workday.  Even
> Dr. Porter opines that the claimant is capable of frequently lifting of [sic]
> 10 pounds and occasional lifting of 20 pounds.  The claimant has
> negative examinations as well as essentially normal x-rays of her
> extremities; therefore, the undersigned opines that the claimant is

---

[52]    *Id*. at 455-56.

[53]    *Id*. at 456.

capable of the above stated [RFC].[54]

Before reaching this conclusion, the ALJ summarized the medical evidence.[55]

Although the ALJ did not conduct a careful, detailed analysis of the factors for rejecting a treating physician's opinion, the Court declines to reverse or remand based on *Newton*.  First, the ALJ did not wholly reject Dr. Porter's medical opinions, but instead modified Dr. Porter's assessment of Gilmore's RFC on one component, *i.e.,* her ability to stand or walk, revising the assessment from two to four hours.[56] Moreover, Dr. Porter's responses on the questionnaire, which is the only evidence to which Gilmore cites, provide absolutely no reasons or evidentiary support for Porter's statement that Gilmore could stand or walk for only two hours per day.  Indeed, Gilmore has cited no medical evidence indicating any basis Dr. Porter would have had for such a conclusion.  There is no indication that Dr. Porter reviewed any medical evidence pertaining to Gilmore's knee or was aware of her knee impairment.[57]  Dr.

---

[54]  R. 15.

[55]  R. 13-15.

[56]  *See Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 510-511 (S.D. Tex. 2003).  It is noted that Dr. Hoang's opinion, credited by the ALJ, was not that Gilmore could stand for four hours in a row, but rather that she could stand four hours total in a workday, two hours at a time.

[57]  Elsewhere in her briefing, when discussing her knee pain, Gilmore cites to her medical records from Dr. Collier at the Veterans Administration in 2006, *see* Plaintiff's Motion, at  18 (citing R. 322, 333-336),  not from the MLK Clinic where
(continued...)

Porter's own questionnaire responses reveal that he was treating Gilmore *only* for her shoulder pain and her breast cancer, and not for her knee impairment.[58]   The Court therefore concludes that the *Newton* standard for treating physicians is not properly applied to Dr. Porter's assessment of Gilmore's ability to stand.   In contrast, Dr. Hoang opined based on his review of the medical evidence of Gilmore's knee impairment.[59]   The ALJ specifically noted that Dr. Hoang's opinion regarding Gilmore's ability to stand was consistent with the medical evidence of record.[60]

Finally, to the extent Gilmore argues under *Newton* that the ALJ erred by failing to request additional evidence to develop the medical record, Gilmore's argument fails because she has failed to show prejudice.[61]   As stated above, Gilmore has cited to no medical evidence supporting Dr. Porter's conclusion on the questionnaire regarding her ability to stand or walk for only two hours that was not already considered by the

---

[57]   (...continued)
Dr. Porter treated her.

[58]   R. 449 (listing diagnoses as "osteoarthritis of the right shoulder" and "breast cancer"). In response to the form's request to "[l]ist your patient's symptoms, including pain, dizziness, fatigue, etc.," Dr. Porter's full response read, "Pain in the right shoulder." *Id*.   When asked to characterize the nature and location of her pain, he responded "Pain is in her right shoulder."   *Id*.

[59]   R. 14-15.

[60]   R. 15.

[61]   *See Newton*, 209 F.3d at 458 ("Reversal . . . is appropriate only if the applicant shows prejudice from the ALJ's failure to request additional information").

ALJ.

Plaintiff's motion for reversal or remand based on *Newton* is denied.

### 2.    Effect of GERD and Drowsiness on RFC

Gilmore argues that the ALJ improperly "ignored" the opinion of Dr. Hoang that, because of her GERD, Gilmore is limited in her ability to bend over.  She argues that, "[d]espite the medical expert's opinion that Plaintiff would have difficulty bending as the result of this condition, the ALJ failed to include any limitations in bending in Plaintiff's RFC."[62]

Gilmore cites to no medical evidence that she suffers from symptoms of GERD or has trouble when bending over.  Rather, Gilmore cites only to Dr. Hoang's testimony at the administrative hearing.  When asked by the ALJ if GERD "is a significant issue," Dr. Hoang responded:

> GERD is, yeah, it can give you some pain but usually you would just treat it with medication.  It may give her [a] problem if she's bending over because she may have symptoms of reflux or heartburn.  That's what she's getting the medications for, the Prevacid.[63]

Medical impairments that can be controlled by medication or treatment are not disabling.[64]  Gilmore has cited the Court to no evidence that she suffers from

---

[62]    Plaintiff's Motion, at 13.

[63]    R. 44-45.

[64]    *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988); *see Brunson v. Astrue*, 387 F.
(continued...)

symptoms of GERD that are unresponsive to medication or treatment.

Gilmore also argues that the ALJ improperly ignored the opinions of Dr. Porter and Dr. Hoang that her medications cause drowsiness.  She argues that the ALJ should have considered the medicine's side effects, in particular, drowsiness and impaired concentration, when assessing her RFC.[65]  Gilmore cites to Dr. Porter's questionnaire responses, in which he stated, "Medications may cause drowsiness."[66] Dr. Porter did not state that Gilmore actually had experienced such a side effect.  Gilmore also cites to Dr. Hoang's hearing testimony, in which he stated that some of Gilmore's medications could cause fatigue.[67]   However, Dr. Hoang went on to state that not every patient suffers from potential side effects and that, if a particular patient did suffer a side effect, the standard of care would require that the physician document the side effect in the patient's chart.[68]  He further testified that Gilmore's treatment notes documented no adverse side effects from her medications.[69]

The Commissioner's findings regarding Gilmore's RFC are supported by

---

[64]     (...continued)
          App'x 459, 461 (5th Cir. 2010).

[65]     Plaintiff's Motion, at 14 (citing *Latham v. Shalala*, 36 F.3d 482, 484 (5th Cir. 1994)).

[66]     R. 449.

[67]     R. 54.

[68]     R. 55-56.

[69]     R. 56.

substantial evidence, which requires "more than a scintilla, but less than a preponderance, and is such relevant evidence that a 'responsible mind might accept as adequate to support a conclusion.'"[70]   The findings therefore are conclusive and must be affirmed.[71]

### 3.    Medication's Side Effects

Gilmore alleges that the ALJ failed to consider the side effects of her medication, which contribute to her disability.[72]   She cites to evidence already discussed above, in particular, Gilmore's testimony that Tamoxifen makes her "kind of tired but not a whole lot" and that she lies down two or three hours per day,[73] Dr. Hoang's testimony that some of her medications could cause fatigue,[74] and Dr. Porter's statement that Gilmore's medication "may" cause drowsiness.[75]   She also cites to the vocational expert's testimony that, if a hypothetical individual's attention and concentration were impaired for 34-66% of the workday, such individual would

---

[70]    *Beck*, 205 F. App'x at 210 (quoting *Watson*, 288 F.3d at 215).

[71]    *Perez*, 415 F.3d at 461.

[72]    Plaintiff's Motion, at 14 (citing, *inter alia*, *Loza v. Apfel*, 219 F.3d 378, 397 (5th Cir. 2000)).

[73]    R. 33.

[74]    R. 54.

[75]    R. 449.

not be able to maintain employment.[76]

As discussed above, Gilmore has not cited this Court to any medical evidence of record that she actually suffered side effects from her medications.  Dr. Hoang testified that her medical records documented no adverse side effects.[77]  The general statements from Dr. Porter and Dr. Hoang that some of Gilmore's medications *could* cause side effects are, of course, insufficient to show that she actually suffered such side effects.  Moreover, the ALJ accommodated some impairment with attention and concentration in Gilmore's RFC.   The ALJ noted that a 2006 psychological examination had shown some difficulty with attention and concentration and stated, "Therefore, even though the claimant said she had no problems in this area the undersigned has given her the benefit of the doubt and provided for this in the [RFC] stated above."[78]   The RFC provided that Gilmore is "limited to understanding, remembering, and carrying out detailed but not complex tasks" and that "[d]ue to reduced stress tolerance she must not work at an assembly line forced pace."[79]

Substantial evidence supports the ALJ's opinion as it pertains to the side effects

---

[76]   R. 63-64.

[77]   R. 56.

[78]   R. 15.  *See* R. 38 (when asked "Do you have any trouble with your memory or concentration that's out of the ordinary?," Gilmore testified, "No, sir, not out of the ordinary").

[79]   R. 13.

of Gilmore's medications.[80]

### 4.     Effect of Obesity When Combined With Knee Impairment

Plaintiff argues that the ALJ failed to consider the aggregate effect of her medical situation as a whole, including her obesity and her knee problems.[81]   Plaintiff states that she is extremely obese which carries a risk of obesity-related impairments.

The ALJ found both Gilmore's obesity and her degenerative disc disease of the knee to be severe impairments, and considered her impairments both singly and in combination.[82]   When assessing her RFC and relying the opinion of the medical expert, Dr. Hoang, he explicitly noted that Dr. Hoang's opinion had taken Gilmore's obesity into account.[83]   He further noted that Dr. Hoang's opinion was consistent with the medical evidence of record.[84]   Dr. Hoang considered the evidence of Gilmore's knee pain, noting that the medical records establish degenerative disease but that there was no evidence of an inability to ambulate effectively.[85]   The ALJ also considered

---

[80]     *See Beck*, 205 F. App'x 207.

[81]     Plaintiff's Motion, at 19 (citing, *inter alia, Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004)).

[82]     R. 12.

[83]     R. 15.

[84]     R. 15.

[85]     R. 14 (citing R.335-36 (Exhibit 5F at 40-41)).  The cited records show that Gilmore's
(continued...)

the "essentially normal x-rays of her extremities" when assessing Gilmore's RFC.[86]

Gilmore has offered no evidence that her obesity imposed additional limitations other than those found by the ALJ. Although Gilmore cites to medical records regarding her knee pain, these same medical records were considered by Hoang when rendering his opinion. The ALJ found that Dr. Hoang's opinion was consistent with the medical evidence of record.

Plaintiff's argument regarding her obesity and knee pain is insufficient to establish that "no credible evidentiary choices or medical findings" supported the ALJ's determinations regarding her credibility and the severity of her symptoms.[87] The Commissioner's findings are supported by substantial evidence, which requires "more than a scintilla, but less than a preponderance, and is such relevant evidence that a 'responsible mind might accept as adequate to support a conclusion.'"[88] The

---

[85]    (...continued)
examining doctor in March 2006 noted her reports of pain and assesses her with "traumatic and post operative osteoarthritis of left knee, moderate to severe." R. 336. The doctor noted no swelling or tenderness; an ability to extend and flex without pain, difficulty, or stiffness; a "very mild limp on the left knee"; and that her morbid obesity was "a factor in the current knee issue." R. 335.

[86]    R. 15.

[87]    *See Boyd*, 239 F.3d at 704 (internal quotation marks and citations omitted).

[88]    *Beck*, 205 F. App'x at 210 (quoting *Watson*, 288 F.3d at 215).

findings therefore are conclusive and must be affirmed.[89]

## V.    <u>CONCLUSION</u>

For the foregoing reasons, the Court concludes Plaintiff has not shown the ALJ's decision should be overturned.  It is therefore

**ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. # 16] is **DENIED**.  It is further

**ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 17] is **GRANTED**.

A separate final judgment will issue.

SIGNED at Houston, Texas, this <u>**31**<u>st</u></u>  day of **January, 2011**.

Nancy F. Atlas
United States District Judge

---

[89]    *Perez*, 415 F.3d at 461.